IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| **LEON D. VESSELL,** § | |
| § | |
| *Plaintiff,* § | |
| § | **CIVIL ACTION NO. 9:20-CV-12** |
| v. § | |
| § | |
| **BLAKE LAMB,** *et al.*, § | |
| § | |
| *Defendants*. § | |

### DEFENDANTS LAMB, STERN, RUNNELS, AND DICKENS'
### MOTION FOR SUMMARY JUDGMENT

Blake Lamb, Taliesen Stern, Joy Runnels, and Patrick Dickens ("Defendants"), respectfully file this Motion for Summary Judgment pursuant to the Federal Rule of Civil Procedure 56, and submit the following in support:

Leon D. Vessell ("Plaintiff") is an inmate in custody of the Texas Department of Criminal Justice ("TDCJ"), currently at the Pack Unit in Navasota, Texas, and proceeds *pro se* and *in forma pauperis*. Plaintiff filed his Original Complaint on February 28, 2017, against various TDCJ and University of Texas Medical Branch ("UTMB") employees, but because the claims involved different factual and legal issues against various defendants, the Court severed the claims against Defendants named above and Susan Vickers ("Vickers"), into the current lawsuit.[1] ECF No. 1; *See also* ECF No. 2.

---

[1] Plaintiff's claims were severed on January 21, 2020. Plaintiff's claims against Vickers were dismissed. ECF No. 12.

Plaintiff filed an Amended Complaint on March 22, 2017, alleging that Defendants were deliberately indifferent to Plaintiff's serious medical needs.[2] *See generally* ECF No. 3. Defendants were employed by TDCJ at the Polunsky Unit ("Polunsky") during the relevant time period. Specifically, Plaintiff alleges that Blake Lamb ("Lamb"), the Assistant Warden, failed to provide him with adequate medical care and housing. *Id*. at 3. Plaintiff alleges that Patrick Dickens ("Dickens"), a Major, Taliesin Stern ("Stern"), a Captain, and Joy Runnels ("Runnels"), the Chief of the Unit Classification Committee ("UCC"), were deliberately indifferent to his serious medical needs by not changing his housing classification. *Id*.

Plaintiff seeks injunctive relief, requesting Major Dickens be terminated, to be housed in an appropriate Medical Unit, Defendants to refrain from retaliating against him, and to be provided orthopedic footwear. *Id*. Plaintiff seeks $550,000 in compensatory damages and $2,400 in punitive damages. *Id*. Defendants filed their Original Answer timely. ECF No. 7. Defendants now move for summary judgment.

## I.    ISSUES OF LAW

1. Whether Defendants acted with deliberate indifference to Plaintiff's serious medical needs by not changing his housing classification.
2. Whether Plaintiff has overcome Defendants' entitlement to qualified immunity.
3. Whether Plaintiff is entitled to injunctive relief.
4. Whether Plaintiff alleges a physical injury under the PLRA.

## II.    RELEVANT MATERIAL FACTS

---

[2] This Motion addresses Plaintiff's allegations contained solely within Plaintiff's Amended Complaint (ECF No. 3). Although Plaintiff filed an Original Complaint (ECF No. 1), it is rendered moot pursuant to Fed. R. Civ. P. 15 ("It is well settled in the Fifth Circuit that an amended complaint supersedes the original complaint, and the original complaint has no legal effect, except to the extent it is incorporated by reference into the amended complaint." *Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996). Plaintiff failed to incorporate his Original Complaint by reference; thus, the Amended Complaint supersedes all allegations made in the Original Complaint.

Plaintiff alleges that he was in a boat crash in 1978 where he suffered third and fourth degree burns to 70% of his lower extremities. ECF No. 3 at 4. Plaintiff developed cellulitis, a bacterial skin infection, in May 2016, while at another unit, that led to four subsequent hospitalizations between July 13, 2016, and September 18, 2016. *Id*. Plaintiff was moved to Polunsky on September 22, 2016. *Id*. Plaintiff alleges that, instead of being placed in housing appropriate for his medical conditions when he arrived, he was placed in Disciplinary Housing (Building 11) for refusing to sleep in his assigned top bunk. *Id*.

Plaintiff further alleges that he was physically incapable of getting into the top bunk because of the injuries he sustained to his lower extremities in the boat crash. *Id*. Plaintiff claims his confinement in Disciplinary Housing prevented him from receiving adequate medical care and caused his medical conditions to deteriorate because he was not able to elevate his lower extremities to prevent further swelling. *Id*. Plaintiff claims that all Defendants had "ample opportunity to review Plaintiff's medical records – charts *HSM-18 before and after their observation of his serious medical condition." *Id*.

Records show that Plaintiff was received at Polunsky on the evening of September 22, 2016. Exhibit A at 46**.** Plaintiff was evaluated by Dr. James Geddes on September 23, 2022, who assigned Plaintiff to one-week of contact isolation because his bacterial infection was contagious. *Id*. Dr. Geddes did not assign Plaintiff restrictions to bunk or ground level at that time. *Id*. Plaintiff was scheduled to see Dr. Geddes on September 26, 2016, but he did not attend his appointment due to lack of a security escort. *Id*. at 46, 60. Plaintiff attended his follow-up visit on October 5, 2016, and was released from contact isolation with no restrictions to bunk or ground level. *Id*. at 52-53.

Plaintiff filed several grievances complaining of his housing classification while at Polunsky, and was repeatedly informed that he was housed appropriately. *See generally* Exhibit A. Plaintiff submitted his housing classifications from the Beto Unit, which showed he previously had a bunk and ground restriction. *Id*. at 32, 38. The grievance response informed Plaintiff that the housing classifications he submitted were for the Beto Unit and he was housed and treated as deemed appropriate for his medical condition at Polunsky. *Id.* at 46. Grievance responses show that Plaintiff was repeatedly instructed that if he had medical issues or needed medical restrictions, he needed to submit a sick call request ("SCR") or contact the Medical Department. Exhibit A at 24, 42, 46, and 84. Similarly, if Plaintiff had concerns regarding his housing classification, he needed to contact Classifications, not Medical. *Id*.

Medical records show that Plaintiff was issued a pass for a ted hose for 180 days, given a cane, provided knee high ted hose, and prescribed body lotion for his burn scars. Exhibit B at 206, 210, 211, 239, 242-245, and 822. Plaintiff submitted SCRs stating that his medical provider added a permanent bottom bunk restriction, but the Medical Department confirmed his medical records did not contain orders for a bottom bunk restriction as of November 11, 2016. *Id*. at 983, 988. Plaintiff's medical restrictions were updated on January 20, 2017, to a ground floor only row assignment. *Id*. at 1149.

### III.   MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendants move for summary judgment. Plaintiff has provided no evidence supporting his assertion that his Constitutional rights have been violated by Defendants. There is no genuine issue as to any material fact and Defendants are therefore entitled to judgment as a matter of law.

In support thereof, Defendants attach the following summary judgment evidence:

**Exhibit A:** Relevant Grievance Records for Plaintiff

**Exhibit B:** Relevant Medical Records for Plaintiff

**Exhibit C:** TDCJ Administrative Directive-04.17, Inmate Housing Assignment Criteria and Procedures.

**Exhibit D:** Affidavit of Lannette C. Linthicum

### IV.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the record discloses "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016), citing FED. R. CIV. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine if the summary judgment "evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Id*. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Anyafulu v. EquiCredit Corp. of Am.*, 16-20180, 2016 WL 7009097, at *2 (5th Cir. Nov. 30, 2016), citing *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) (citation omitted).

### V.     ARGUMENT

**A. There is no evidence to support Plaintiff's claim that Defendants were deliberately indifferent to his serious medical needs.**

Deliberate indifference is an extremely high standard to meet. *Domino v. Tex. Dept. of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In order to state a claim for a violation of the Eighth Amendment, a plaintiff must allege that defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976). To establish an Eighth

Amendment violation by a prison official for failure to provide adequate medical care, a prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id*. A prison official may violate the Eighth Amendment's prohibition against cruel and unusual punishment if he or she acts with deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 352 n.12 (5th Cir. 2006).

Unsuccessful medical treatment, negligence, neglect, and medical malpractice do not give rise to a Section 1983 cause of action, and an inmate's disagreement with his medical treatment does not establish a constitutional violation. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Even if a lapse in professional judgment occurred, such a failure would amount to mere negligence or malpractice, not a constitutional violation. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). Deliberate indifference, as it is used in the Eighth Amendment context, comprehends more than mere negligence but less than purposeful or knowing infliction of harm; it requires a showing of "subjective recklessness" as used in criminal law. *Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994); *Hare v. City of Corinth*, 74 F.3d 633, 647–48 (5th Cir. 1996). Deliberate indifference exists where an official knows of an excessive risk to inmate health or safety and also disregards that risk. *Farmer*, 511 U.S. at 836. Deliberate indifference in the context of the failure to provide reasonable medical care to a convicted prisoner means that: (1) the prison officials were aware of facts which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicates that the officials

subjectively intended that harm occur. *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 458-59 (5th Cir. 2001).

**1. Defendants were not deliberately indifferent to Plaintiff's serious medical needs.**

Plaintiff does not set forth any facts that would indicate any of the Defendants knew of a substantial risk of harm to Plaintiff and also consciously disregarded that risk. Plaintiff states that Warden Lamb failed to provide adequate medical care and housing when Plaintiff arrived at Polunsky on September 22, 2016, and after a Unit Classification Committee ("UCC") hearing on October 17, 2016. ECF No. 3 at 3. It seems that Plaintiff sued Major Dickens, Captain Stern and Joy Runnels because they were members of the UCC and present at one of Plaintiff's hearings for disciplinary regarding his refusal of a top bunk assignment. *Id*.

Plaintiff states that when asked why he refused housing, he exposed his legs to the UCC and Major Dickens responded, "I've got legs too, what [are] you showing me?" ECF No. 3 at 4. Plaintiff claims this comment shows that Major Dickens was deliberately indifferent to Plaintiff's "obvious conditions" when he exposed his legs. *Id* at 3. Plaintiff's Amended Complaint assumes that merely because Plaintiff exposed his legs to the UCC, that they knew of a substantial risk of harm to Plaintiff and also consciously disregarded that risk by purposefully keeping him in inappropriate housing for his medical condition. In fact, Dickens' response indicates there was nothing obvious to the security personnel on the UCC regarding his legs.

The University of Texas Medical Branch ("UTMB") is mandated by legislature to contract with TDCJ to provide health care services to inmates. Exhibit D. All the medical staff at Polunsky are employed by UTMB, which has its own organizational structure. *Id*. Because TDCJ and UTMB are two separate entities, there is no employer-employee relationship between TDCJ and those providing direct patient care services. *Id*. Inmates are examined by a healthcare provider to

determine current needs and medical limitations and restrictions will be assigned and entered in the EHR and must be adhered to by the UCC when assigning housing. *Id*.

Per TDCJ policy, the warden shall ensure that inmate housing assignments meet the treatment needs of all inmates and shall be delegated by the warden to the UCC or the Assistant Warden, Building Major or Captain, shift supervisor, security detention supervisor, or Chief of Unit Classification. Exhibit C at 3. Healthcare staff assign and enter appropriate limitations and restrictions in the inmate's electronic health record ("EHR"), which populates the Health Summary for Classification ("HSIN") screen with any changes in an inmate's health status that could require a housing move for health-related reasons. *Id*. The health-related criteria considered when making housing assignments looks at current medical status and needs due to a medical condition, as determined by healthcare staff. *Id*. at 7.

When making initial housing assignments, the designated staff member or committee responsible will review the HSIN screen and EHR to determine if there are any health-related needs or restrictions relative to the inmate's housing assignment. *Id*. If unit healthcare staff determine a change in an inmate's status regarding mental limitations is necessary, unit healthcare staff will note any new or changed limitations in the EHR. *Id*.

Warden Lamb, Major Dickens, Captain Stern and Joy Runnels are clearly not medical professionals or members of the healthcare staff. Most significantly, they are not employees of UTMB. Their responsibility as employees of TDCJ and members of the UCC is to assign inmates housing appropriate with their needs, taking into consideration their medical restrictions and limitations, as designated by UTMB healthcare staff. Plaintiff's allegations do not show that Defendants were aware of Plaintiff's medical conditions and consciously disregarded them by

placing him in inappropriate housing that they knew could aggravate his medical ailments. Rather, the evidence shows that Defendants ensured that Plaintiff was housed appropriately.

Even if the collective Defendants' decision as members of the UCC to deny Plaintiff's request for housing classification change could be considered medical negligence, the Fifth Circuit is firm in its holding that medical negligence, by itself, is insufficient to constitute deliberate indifference. *Harris*, 198 F.3d at 159. Further, Defendants' actions or omissions in determining Plaintiff's housing classification, and any disagreements that Plaintiff had with his housing classification, are insufficient to meet the standard of deliberate indifference. *See Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992) (holding that disagreement with medical classification does not state a constitutional violation).

   2. **Defendants were never personally involved with the medical care of Plaintiff and had no supervisory role over the medical staff in charge of Plaintiff's medical restrictions.**

Because Defendants were not personally involved in the medical care of Plaintiff, Defendants could not have been deliberately indifferent to Plaintiff's serious medical needs. In a civil rights cause of action, a plaintiff's complaint must allege a defendant's personal involvement in a constitutional violation. *Cass v. City of Abilene*, 814 F.3d 721, 729 (5th Cir. 2016); *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (stating that "[p]ersonal involvement is an essential element of a civil rights cause of action*"); Floyd v. Unknown Nurse Assistant*, 690 Fed. App'x 173, 174 (5th Cir. 2017) (affirming the district court's dismissal of plaintiff's claim against a deputy for failing to allege the personal involvement of the deputy in an alleged constitutional violation). In a deliberate indifference claim against a defendant, "the deliberate indifference standard presupposes some level of personal involvement by the defendant." *Amerson v. Pike County, Miss.*, No. 3:09-CV-53-DPJ-FKB, 2012 WL 968058, at *3 (S.D. Miss. Mar. 21, 2012).

Importantly, "[section] 1983 does not give a cause of action based on the conduct of subordinates." *Thompson*, 709 F.2d at 382; *see also Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) ("Only the direct acts of omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983") (internal citation omitted). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Id.* at 303–04. Further, "[m]ere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 U.S. Dist. LEXIS 136508, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677). "Supervisory officials may be held liable if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak*, Tex., 977 F.2d 924, 929 (5th Cir. 1992).

Here, Plaintiff only provides conclusory statements that Defendants knew of his medical condition and his need for a low bunk housing assignment because he showed them his legs at a disciplinary hearing but provides no evidence or facts to support an inference that Defendants were personally involved or have supervisory liability. Major Dickens' comment shows that Plaintiff's medical condition was not visibly obvious to the UCC. Further, there was no bottom bunk restriction noted on his file and the UCC is required to adhere to limitations and restrictions noted in inmate's files when making housing assignments. Exhibit D. Even if Defendants knew of Plaintiff's medical condition or that it was painful and difficult for him to get into a top bunk, none of them had authority to direct UTMB staff to assign Plaintiff a low bunk housing restriction because UTMB operates with total medical autonomy. *Id*. The evidence shows that Defendants' response was proper within their role as non-medical officials of the UCC.

### B. Defendants are entitled to qualified immunity.

As state officials, Defendants are entitled to qualified immunity. Government employees sued in their individual capacities are presumptively entitled to the defense of qualified immunity. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Jackson v. City of Beaumont*, 958 F.2d 616, 620 (5th Cir. 1992) (determining that qualified immunity shields defendants from suit, not just from liability). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341(1986)).

In a qualified immunity analysis, an official's personal liability for "an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing Harlow, 457 U.S. at 819). The plaintiff bears the burden of negating the defense of qualified immunity, *see Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017), and any "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are all insufficient to overcome [qualified] immunity." *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016).

The Supreme Court articulated a two-step inquiry to evaluate a government official's entitlement to qualified immunity: a court must (1) consider whether the facts alleged by the plaintiff implicate a violation of a constitutional right, and (2) determine whether the claimed right was "'clearly established' at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations omitted). Importantly, the plaintiff's complaint must

allege the Defendants' personal involvement. *Cass*, 814 F. 3d at 729 (stating that the defendant was not personally liable under § 1983 because the plaintiff provided no evidence of the defendant's involvement in the acts that allegedly violated the plaintiff's constitutional rights). "A government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Stauffer v. Gearheart*, 741 F.3d 574, 583 (5th Cir. 2014) (internal quotation marks and citations omitted).

To the extent that Plaintiff argues Defendants are liable in their individual capacities, there exists no evidence to support his claims that Defendants were deliberately indifferent to his serious medical needs. As previously explained, Plaintiff's disagreement with his housing assignment does not constitute deliberate indifference. *See Wilson*, 976 F.2d at 958. Plaintiff can provide no evidence other than his own conclusory, self-serving statements, which are not the type of significant probative evidence required to defeat summary judgment." *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013) (citing *United States v, Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001)).

Therefore, Plaintiff has failed to demonstrate a genuine issue of material fact over whether Defendants' conduct violated his constitutional rights or whether Defendants' conduct was objectively unreasonable. Accordingly, Defendants are entitled to qualified immunity and this Court should grant summary judgment in Defendants' favor.

### C. Plaintiff is not entitled to injunctive relief.

To the extent Plaintiff seeks injunctive relief to terminate Major Dickens, prevent retaliation, and provide him with orthopedic footwear, the court in *Ex Parte Young* set forth a narrow exception to Eleventh Amendment immunity allowing prospective injunctive relief through official capacity actions. *Ex Parte Young*, 209 U.S. 123, 159-60 (1908). However,

injunctive relief is "to be used sparingly, and only in a clear and plain case." *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (quoting *Irwin v. Dixion*, 50 U.S. 10, 13 (1850)). When a government agency is involved, a court must additionally observe the requirement that the government be granted the "widest latitude in the dispatch of its own internal affairs." *Id*. at 378-79.

An inmate's requests for injunctive relief must be viewed in conjunction with the requirements of the Prison Litigation Reform Act ("PLRA"). Under the PLRA, the court must find that the prospective relief is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right" before granting injunctive relief. 18 U.S.C. § 3626(a). Although the PLRA significantly affects the type of prospective injunctive relief that may be awarded, it has not substantially changed the threshold findings and standards required to justify an injunction.

A party seeking an injunction must establish the following merits: 1) there is a substantial likelihood the party will prevail on the merits; 2) a substantial threat exists that irreparable harm will result if the injunction is not granted; 3) the threatened injury outweighs the threatened harm to the defendants; and 4) the granting of the preliminary injunction will not disserve the public interest. *Sugarbusters v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999); *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991); *Canal Authority of the State of Florida v. Calloway*, 489 F.2d 567, 572 (5th Cir. 1974). Relief should be granted only if the party seeking relief has clearly carried the burden of persuasion as to all four elements. *Black Fire Fighters Association v. City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990); *Mississippi Power & Light v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985).

Plaintiff's request for injunctive relief to terminate Major Dickens fails in several respects. First, courts accord great deference to the internal administrative decisions of prison officials.

*Royal v. Clark*, 447 F.2d 501, 502 (5th Cir. 1971); *Krist v. Smith*, 439 F.2d 146, 147 (5th Cir. 1971); *Haggerty v. Wainwright*, 427 F.2d 1137, 1138 (5th Cir. 1970). The Supreme Court has continuously cautioned federal courts from assuming "a greater role in decisions affecting prison administration." *Shaw v. Murphy*, 532 U.S. 223, 230 (2001); *Turner v. Safley*, 482 U.S. 78, 84–85 (1987). Second, there is no constitutional violation that needs to be corrected. Major Dickens was not deliberately indifferent to Plaintiff's serious medical needs. Even if Major Dickens were found to be deliberately indifferent, the request that he be terminated is not narrowly drawn. Last, and most importantly, Plaintiff alleges no harm he will suffer if Major Dickens is not terminated, let alone irreparable harm.

Plaintiff's request for orthopedic footwear also fails. As discussed above, none of the Defendants are employed by UTMB and cannot provide medical care. Exhibit D. UTMB has total medical autonomy and the decision to provide an inmate with orthopedic footwear is made by a UTMB healthcare professional and not TDCJ. *Id*.

Plaintiff's request that TDCJ "refrain from retaliation" similarly fails. Plaintiff has provided no evidence that he has ever experienced retaliation from TDCJ, so he is unable to demonstrate that there is a substantial threat that irreparable harm will result if the injunction is not granted. The only harm Plaintiff alleges regarding any of the injunctive relief he requests is his personal belief that he is unable to sleep in a top bunk. Even then, that complaint does not rise to the level of harm as to constitute a constitutional deprivation warranting injunctive relief. He simply has failed to show irreparable harm. As a result, Plaintiff is not entitled to injunctive relief. Because he fails to satisfy the standards required to justify an injunction, his requests for injunctive relief should be dismissed.

### D. Plaintiff's requested injunctive relief is moot.

Plaintiff seeks injunctive relief in the form of "assignment to appropriate medical unit." ECF 3 at 4. Plaintiff was assigned a ground floor only restriction on January 20, 2017. Exhibit B at 1149. Plaintiff's entire lawsuit is premised on the idea that he should have had a low bunk only restriction and his top bunk assignment was contrary to his medical needs. A request to be assigned to the appropriate medical unit, or be as assigned a low bunk restriction, renders his claim for injunctive relief moot. *Cooper v. Sheriff, Lubbock Cnty., Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991); *see also Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988). There is nothing more for the Court to order to redress the alleged harm. *Staley v. Harris Co., Tex.*, 485 F.3d 305, 309 (5th Cir. 2007) (en banc) (citing *Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1998)) ("[W]e find it beyond dispute that a request for injunctive relief generally becomes moot upon the happening of the event sought to be enjoined.")); *see also Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (holding that an inmate's transfer from an offending institution normally "rendered his claims for declaratory and injunctive relief moot").

### E. Plaintiff does not have a protectable right in his housing classification.

To the extent Plaintiff complains about his top bunk assignment, expressing his belief that he should have had a bottom bunk restriction, he essentially complains of his classification. Inmates have no protectable property or liberty interest in custodial classification. *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992); *Moody v. Baker*, 857 F.2d 256, 257–58 (5th Cir. 1988). The classification of prisoners is a matter within the discretion of prison officials. *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990). Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials. *Jackson v. Cain*, 864 F.2d 1235 (5th Cir. 1989).

### F. Plaintiff does not allege a physical injury under the PLRA.

An inmate's suit under 42 U.S.C. § 1983 must comply with the physical injury requirements of PLRA. *See* 42 U.S.C. § 1997e(e). The PLRA provides: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Further, an inmate may not seek compensatory damages "for violations of federal law where no physical injury is alleged." *Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 605 (5th Cir. 2008). The physical injury must be "more than de minimus." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999).

It is the nature of the relief sought, and not the underlying substantive violation, that controls the application of the physical injury requirement contained in Section 1997e(e). *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005). "Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Id*. The physical injury requirement does not apply to requests for declaratory or injunctive relief. *Id*. When there is no physical injury and only compensatory damages are sought, the claim for damages should be dismissed. *Mayfield*, 529 F.3d at 605-06. Failure to sufficiently allege an injury is fatal under the PLRA. *Hawkins v. Trents Flying Serv.*, 45 F. App'x 325 (5th Cir. 2002) (citing 42 U.S.C. § 1997e(e) (stating that a physical injury must be adequately alleged for a claim under the PLRA)); *Calhoun v. Hargrove*, 71 F. App'x 371, 372 (5th Cir. 2003) (reinforcing the principle that a physical injury is required for a claim under the PLRA).

Here, Plaintiff alleges no physical injury rising to the level of a constitutional violation. Plaintiff states that Defendants failed to give him appropriate bedding to elevate his lower

extremities to prevent severe swelling. ECF 3 at 4. Plaintiff further claims he was physically incapable of climbing into a top bunk. *Id*. However, Plaintiff's medical records show that he did not complain of an injury caused by being on the top bunk. *See generally* Exhibit B. These allegations are not sufficient to meet the PLRA's physical injury requirement. To the extent Plaintiff's allegations show he suffered a physical injury, the physical injury is de minimis. As such, Plaintiff is not entitled to compensatory damages.

## VI.   CONCLUSION

Defendants respectfully requests that this Court grant their Motion for Summary Judgment and dismiss all claims against them with prejudice.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
Deputy Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Division Chief
Law Enforcement Defense Division

*/s/ Marlayna M. Ellis*
**MARLAYNA M. ELLIS**
Assistant Attorney General
Law Enforcement Defense Division
State Bar No. 24123448
Office of the Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080 / (512) 936-2109 Fax No.
Marlayna.Ellis@oag.texas.gov

**ATTORNEYS FOR DEFENDANTS**

**NOTICE OF ELECTRONIC FILING**

I, Marlayna M. Ellis, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing a true and correct copy of the above and foregoing, in accordance with the Electronic Case Files System of the Eastern District of Texas, Lufkin Division on July 12, 2022.

> */s/ Marlayna M. Ellis*
> **MARLAYNA M. ELLIS**
> Assistant Attorney General

**CERTIFICATE OF SERVICE**

I, Marlayna M. Ellis, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing, has been served by placing it in United States mail, on July 12, 2022, addressed to:

*Via Certified Mail*   **7020 1290 0000 7447 0434**

Leon D. Vessell, TDCJ No. 1011742
Wallace Pack Unit
2400 Wallace Pack Road
Navasota, TX 77868
*Plaintiff Pro Se*

> */s/ Marlayna M. Ellis*
> **MARLAYNA M. ELLIS**
> Assistant Attorney General